We'll hear argument first this morning in Case 09-1132-8, Davis v. United States. Mr. Kerr. Thank you, Mr. Chief Justice, and may it please the Court. This case raises the intersection of two similar doctrines of the same vintage that point in exactly opposite directions, the first, retroactivity, and the second, the good-faith exception. This Court should reverse and hold that the good-faith exception does not apply to reliance on precedent, and instead, that should be governed by the retroactivity principles of Griffith v. Kentucky. I think it's helpful to start with Linkletter v. Walker, the 1965 decision that introduced the concept of retroactivity. Linkletter held that Mapp v. Ohio, which it held that the exclusionary rule applied to State violations of the Fourth Amendment, is not retroactive. The Linkletter decision was premised on a simple syllogism. The exclusionary rule is about deterrence, a decision that postdates a search cannot deter the police, and therefore, the exclusionary rule should not be available in cases before Mapp. Linkletter syllogism is the same syllogism that the Court is attempting to rely on in this case. History has shown that that syllogism is powerful in the context of collateral review and habeas corpus proceedings, but it should not apply on direct review. It should not apply on direct review for two basic reasons. First, because on direct review, the first case must be treated like other cases on direct review. The exclusionary rule must be available in order to protect the adversary process and avoid advisory opinions. Scalia. Excuse me. You lose me in the argument, because it doesn't seem to me that we, if we did apply the good-faith rule, we would be denying retroactive effect to the altered judgment. It continues to apply to matters beforehand, but it's a totally different question whether, assuming it is retroactive, the good-faith exception to the exclusionary rule applies. It's a separate question from retroactivity, it seems to me. I disagree, Justice Scalia. During the Linkletter period, the scope of the exclusionary rule for the Fourth Amendment was an essential concern in a series of retroactivity cases, Linkletter being the first, DeSist v. United States being the second. There were many of the Linkletter-era retroactivity cases were concerned with the Fourth Amendment exclusionary rule. Kennedy, but just to pursue Justice Scalia's point, the good-faith rule is itself a rule that's intact, that's a precedent that was on the books, and the good-faith rule qualifies the exclusionary rule. So why aren't we just following the good-faith rule here? I mean, there's nothing retroactive or prospective about it. It's just applying the existing law. I disagree, Justice Kennedy. It's not applying existing law, because the effect of what is labeled the good-faith exception in this setting is actually to apply the prior decision, that is, to have all of the substance and effect of a retroactivity decision. Well, that's an application of the — that's a subset. It's one application of the good-faith rule, which is an overall principle. But we're being faithful, under the government's view, it seems to me, to the overall principle. I think the Court needs to take away the labels here. The government is using a label of good faith for what is essentially a retroactivity argument. It's not a label at all. We're not denying the application of the alter rule to your client's conduct. It applies. But the question of whether, when it does apply, the good-faith disregard of it by a police officer, nonetheless, allows the evidence to be admitted. It's a totally different — we're giving full retroactive effect to the change in the law. At the same time, Justice Scalia, whatever rule is applied in this case would have to be the same rule that applies in Gantt itself. And without the incentive of counsel to argue in favor of a change in the law, that would block claims by a defense attorney to overturn the precedents of the court.  Roberts. Well, Mr. Kerr, our cases have talked about the deterrence impact on police conduct. It seems to me you're trying to expand that notion to cover incentives for defendants. And as I read, I guess it's Leon, in footnote 25, it says, The argument that defendants will lose their incentive to litigate meritorious Fourth Amendment claims as a result of a good-faith exception is unpersuasive. Leon, I think, raised a different setting. It raised the question of reliance on errors by a magistrate judge, which simply does not implicate the concerns of retroactivity, which is this Court changing its interpretation of the Fourth Amendment. I think that raises a distinct set of principles, as Justice Harlan recognized in his dissent in DeSist and his separate opinion. But I think our theory on the exclusionary rule across the board, without regard to the underlying substantive violation, is that you look to deterrence of police conduct. And here, I mean, you agree the police did nothing wrong in this case, don't you? Yes. So what impact — why do we want to deter them from doing what's right? Because it takes two branches of government for the exclusionary rule to deter constitutional violations. The Court has to properly construe the Fourth Amendment, and the police need to then properly follow the Court's precedents. The Court can't turn away from the role of this Court's precedents in the enforcement of the Fourth Amendment. Well, I understand your argument with respect to decisions of this Court, and I think that's your strongest argument. But would you concede that that argument does not apply when the precedent on which the police are relying is a decision of one of the courts of appeals or a State Supreme Court Fourth Amendment decision? In that situation, there will be plenty of avenues for obtaining review of the correctness of those decisions. Isn't that right? Justice Alito, I think it depends on what the good faith exception is. The government's brief, I think, does not exactly articulate what the standard is to which it would like to apply. Even so, most circuit court decisions interpreting the Fourth Amendment are derivative of this Court's decisions interpreting the Fourth Amendment. And this case is a good example. The facts of this case are quite similar to the facts of Belton. The Eleventh Circuit had not actually expanded upon Belton. It had merely had relatively routine applications. Well, it applied its understanding of Belton, which turned out to be different from the understanding of the Arizona Supreme Court in Gantt and the understanding of at least four members of this Court when Gantt got here. At the same time, the Eleventh Circuit's development of the law was — went no further than Belton itself. And this Court needs adversaries to make forthright arguments to this Court which may involve distinguishing precedent and may involve overturning precedent. Alitoso, if I could just come back to my question. Suppose you have a decision in one of the courts of appeals that says certain conduct is permitted under the Fourth Amendment and the police in that circuit, Federal law enforcement officers in that circuit, follow that precedent. Now, is — will there not be plenty of opportunities to review the correctness of that decision because the issue may arise in other circuits where the matter isn't settled? If this Court adopts a good-faith exception that is quite narrow and would not allow an officer in one circuit to reasonably rely on the clear circuit court decisions of another circuit, that's certainly a possibility. However, it's not clear as to why the Court would adopt such a narrow version of the  The language that the government proposes, at least, seems to be the language of qualified immunity, the notion of reasonable reliance on a decision being a — a belief to be lawful. So the Court's — Ginsburg, Mr. Kerr, the line that has been suggested by Justice Scalia, Justice Kennedy, that is exactly the line that the Eleventh Circuit took. Is it not the case? I mean, Judge Kravitz said, yes, the Fourth Amendment was violated, so to that extent we're following retroactivity precedent, but the remedy is something different. That was exactly the line that she took, wasn't it? That's correct. Ginsburg, and if you — on your theory, I mean, there's another question in this case, that is, perhaps this evidence would come in under the inventory, as a legitimate inventory search, and if the Court decided that question, then — then the question you're arguing, the exclusionary rule question, would have no practical consequence. So on your theory, the way you reason, shouldn't the Court first decide, was this a legitimate inventory search, and if so, then we never get to any exclusionary rule question? That issue, of course, has not been briefed in this case. It would remain for the Eleventh Circuit to apply that in the event the Court reverses. At the same time, I wish to be clear that I'm not arguing that the exclusionary rule is available in every case when the Court overturns its precedent, merely that it is a remedy in some cases, and I think it's actually a necessary cost. Roberts. If I could just follow up on Justice Ginsburg's question, why did this defendant have any incentive to bring his constitutional claim if, as may or may not appear too likely, the inventory search is going to result in the admission of the evidence anyway? It seems that your theory goes too far in saying that defendants will never have an incentive to bring a constitutional challenge if there's some other ground on which the evidence might be admitted, and that's never been our law. I agree that it's never been the Court's law, and I think there's an important distinction to be made here. The distinction is between an argument that has a remote chance of success, and defendants will make those claims, and arguments that have no chance of success. Roberts. Well, it's often. We do that. We take cases where you can bring a constitutional challenge or a different challenge all the time. Qualified immunity cases, you know, what was the law and was it clearly established? Defendants bring the qualified immunity cases all the time, even if they have a tough case on whether it's clearly established. Harmless error cases, the underlying violation, whether it's a harmless error, and the Court can decide the case on either ground, but that doesn't keep defendants from bringing the claims. But there's a big difference between a tough case and no case. The difficulty of the government's claim is that a defendant would know any effort to challenge this Court's precedent cannot logically lead to any relief. Either the defendant will lose on the merits if the Court upholds its precedent, or the defendant will lose on the merits. Roberts So your incentive argument really only holds up when the ground on the alternative ground is hopeless. Otherwise, we'll expect the defendants to bring a Fourth Amendment claim because it's pretty easy to bring. And I wish to be clear, hopeless meaning a 0 percent chance of likelihood. That's the difficulty of the government's position. Mr. Kearns, let's say I'm concerned about the kinds of issues that you are raising, the incentives on defense counsel, and also the oddity of the Court deciding a case in which it's absolutely not possible to grant a remedy. Wouldn't the solution to that be not the rule that you're advocating, but instead a much more limited rule which said that in that case the exclusionary rule applied, but not in any other case, not in any case on direct appeal? I think Justice Harlan's answer to that is persuasive, that it's inconsistent with basic norms of constitutional adjudication to treat the first case differently from other cases not on — other cases on direct appeal. I guess, Mr. Kerr, I'm not sure that that's right. Justice Harlan was talking about constitutional rights at a period where, as the Chief Justice said, the exclusionary rule was viewed as part of the constitutional right. But if this Court doesn't view the exclusionary rule that way anymore, if it views the exclusionary rule as simply a prophylactic rule which gives a particular defendant a windfall in order to gain systemic effects, systemic benefits, why would we do it any more broadly than we would need to do it? And we would just say, look, we understand your point that this would very much change the incentives for defense counsel. We understand your point that it's kind of, I don't know, maybe inconsistent with Article III to take a case in which there was absolutely no chance of relief being granted. But we can deal with those issues simply by saying that in your case you get relief, but not in any other. Kerr, Justice Kagan, that was the precise premise of the link letter regime. The idea of the exclusionary rule as a judge-created remedy, the idea of the exclusionary rule as not being a personal right, that actually was the premise of link letter. So to go back to something that resembles that regime in substance, even if with a new label, I think is ill-advised in light of the history of the link letter era. And the Court struggles to try to articulate a consistent standard that can treat the first case and other cases similarly. I think DeSist was a Fourth Amendment case. Peltier, also a Fourth Amendment case. The government's proposal is essentially a return to Peltier with the difference of if the Court wants to treat the first case differently than later cases, it is essentially recreating Peltier. Alito, with respect to the incentives that you're talking about, is there really much difference between what would apply in a case like this and what already applies in cases that fall under Krull? Suppose Congress enacts a statute that authorizes a search under particular circumstances, as it did, as was the case in Almeida-Sanchez. Now, under Krull, nobody is going to be able to, and no one who is subjected to a search under that statute is going to be able to challenge, to obtain suppression, unless you can say that a reasonable law enforcement officer couldn't have thought that this statute, which was enacted by Congress and signed by the President, was a correct interpretation of the Fourth Amendment. Now, maybe there will be a few cases like that, but in the great majority, the vast majority of cases, that the person will not be able to mount such a challenge. So what is the difference between the situation here and the situation that the Court already approved in Krull? I think there are two differences. One is that there is a substantial difference from the standpoint of a defendant or defense attorney between a remote chance of success in a legal claim and no chance of success on a legal claim. Krull leaves open the possibility, and it may be remote, but nonetheless a possibility of relief if the defendant can persuade a court that a reasonable officer would have known, in light of this Court's precedent, that the statute allowed unconstitutional search. Alito, we could leave that open here. We could say that there is no good-faith immunity if a reasonable officer couldn't have believed that a prior decision of this Court was a correct interpretation of the Fourth Amendment. Now, that sounds — maybe that sounds strange only because we have a higher opinion of ourselves than we do of the Congress and the President. And yet, I think your hypothetical, your suggestion that perhaps the Court could adopt that standard shows the difficulty of trying to craft a good-faith exception that ends up running up against the link letter problems. This is exactly the issue the Court struggled with during the link letter era. Ginsburg. Is essentially — is your argument essentially that we should distinguish never, which would be this case if your position is not right, and hardly ever? Is that? That's correct. Where the rule is never, defendants are unlikely to make any sort of claim. And this Court would be denied the opportunity to review its own precedents, and that's an essential role of this Court's decisions in the Fourth Amendment statute. Well, you might respond to the — the government's going to say, well, there's Monell that's in their — in their brief, and I — you'll probably say that that's a weak substitute for the criminal defense attorneys doing it in the trial itself. It is a weak substitute. There's been no case that I'm aware of, at least, involving liability against a municipality seeking law reform. And it's because the Court has rejected the notion of municipal liability as being based on respondeat superior. Suppose we were concerned with the costs of your rule in the sense that Gant does have some exceptions for the safety of the officers, and I think you can read the case if it's — there's some general safety considerations for not securing a car in a neighborhood rather than leave it by itself. If — if we adopted your rule, the prosecution in all those cases would not have had the opportunity to make those — those additional defenses or those — to advance those additional justifications for the search. Maybe you'll say, well, I'm just trying to resurrect Linkletter. Oh, I disagree. Just to explain, Justice Kennedy, my rule would be to retain the existing practice of this Court. I'm suggesting no changes in the practice of this Court, and that is when the Court recognized the need to overturn Belton, or at least to substantially change Belton in the Gant case, the Court, Justice Alito in his dissent, recognized that there were costs along with that, and that led to review of cases in the lower courts. In many of those lower court decisions, the lower courts held that the searches were nonetheless constitutional under Gant, and that was absolutely proper. In those situations, there is no constitutional violation. No — no one goes first. Kennedy, those cases were pending. I was concerned with cases that were closed, I suppose. In the closed cases, I'm not in any way challenging the traditional rule of Keague v. Lane and Stone v. Powell that the new rule is not available. As soon as the conviction is final, the door is closed, and no defendant can seek review. This is only about direct review and the initial case in which the rule is announced. And that's why I think it raises a special set of jurisprudential problems, because it implicates this Court's need to avoid advisory opinions and to avoid what would amount to a one-way street. Under the government's proposed rules, proposed rule, defendants would have a limited ability to challenge precedents that construe the Fourth Amendment too narrowly. But, of course, the government would be free in any case to challenge precedents that the government believes construes the Fourth Amendment too broadly. And the concern is that over time, that would lead to an asymmetry in the Court's outcomes, not as a result of the measured judgments of this Court, but rather as a result of the incentives on counsel, and the Court should strive to avoid that sort of result. Roberts, you're asking us for an exception to our general approach, assuming the general approach is not the one you succeed, for, as you've put it, cases where there's zero possibility of success. While allowing application of the good-faith precedent, even if the chances of success are remote. Is it really worth the candle to have litigation over whether it was a difference between zero chance and remote chance, as opposed to continuing to apply the good-faith rule across the board? Just to be clear, the Court has not applied the good-faith exception in this setting. The government is arguing for an expansion of the good-faith exception into territory which has traditionally been thought to be the regime of retroactivity. Roberts, I understand your position on that. Now, getting to my question, is it really worth it for us to have litigation over the difference between zero and remote in determining what rule we should apply in this case? I don't foresee litigation on that point, because at least as I understand the government's rule, as soon as a defendant utters the phrase, this Court should overturn its precedent, then the good-faith exception would automatically apply. That's at least how I understand the government's proposed rule. So it would be up to this Court to craft exactly what the standard would be. But if the standard is broad enough such that upon asking for a remote chance to apply it, then the Court would have to overturn its precedent.  I don't foresee litigation on that point. I don't foresee litigation on that point. And if not, here's why our case is different. And we would still be required under your theory to look if that second argument has zero chance or only a remote chance. In that circumstance, I think the Court would be forced with issuing what – forced to issue what may amount to an advisory opinion. Roberts And it seems to me, I mean, in terms of the incentives on the defense counsel, it would be an odd defense lawyer who is going to say you should consider argument A, because my second argument has got zero chance of succeeding. I think the incentive on defense counsel, if the government's rule is adopted, is to never argue that cases should be overturned, and instead make not terribly candid arguments to this Court that every case is distinguishable. Scalia Mr. Carr, I've been on the bench, you know, 30 years or so now. I have never, never heard counsel come before the Court and say that we should overrule a case without making the argument the facts of this case are not within the prior decision anyway. It just doesn't happen. Carr, Katz v. United States is perhaps a case worth focusing on, where the Court overturned the rule of Goldman and Olmstead that wiretapping does not implicate the Fourth Amendment. Katz's brief to this Court argued that the Goldman-Olmstead regime had – was no longer applicable, had been implicitly overturned by prior cases, and then said if it has not been implicitly overturned, it must be overruled. There was no attempt to try to distinguish the facts of the Katz case from the Goldman-Olmstead regime. Scalia There was still not the argument you should overrule the prior case, period, with no effort to show why you could come out that way without overruling the prior case. I just don't know about the case that never happens. Carr, Those arguments, I agree, Justice Scalia, are rare. At the same time, they are important arguments. It is an alternative argument. Scalia I'm not saying they're non-existent. I'm not saying they're rare. The difference between zero and remote. Carr, Nonetheless, the incentive on counsel under the government's rule would be not to ever make the claim that a precedent should be overturned. And the Court needs that argument to be made in appropriate cases so the Court can enter decisions and consider the balance of the considerations appropriately. It has done so under the current practice, and that is really as a result of Griffith v. Kentucky, which applies not only in the first — allows the exclusionary rule to be available in the first case, but in other cases on direct review. If there are no further questions, I would like to reserve the balance of my time. Roberts Thank you, counsel. Mr. Dreeben.  Dreeben Your Honor, because the exclusionary rule has severe consequences for the truth-seeking function of a criminal trial, this Court has restricted its application to those situations in which it's necessary to further the deterrent purpose of the exclusionary rule, namely to shape police conduct. The Court has repeatedly rejected efforts to expand the exclusionary rule to serve other purposes, such as schooling judges who issue warrants on the need to respect the Fourth Amendment, reminding legislatures about their obligations under the Fourth Amendment, and for other purposes such as to preserve judicial integrity. Ginsburg Mr. Dreeben, what about Gantt itself? Gantt, a severely qualified Belton. Should there have been a suppression remedy for Gantt, as Justice Kagan suggested? The very case that changes the law. Dreeben Justice Ginsburg, let me give two responses to that. First of all, the rule that the Eleventh Circuit adopted in this case, and that is the only rule before the Court, involves a situation in which there is binding appellate precedent that instructs the officer, tells the officer, what you're about to do complies with the Fourth Amendment. The state of the law in Arizona would not necessarily have risen to that level in light of the dissonance in that Court's opinions, in the Arizona Supreme Court opinions, about the reach and scope of Belton. So the question about whether the rule that we're urging here would have applied in Arizona is a separate question from the one that the Eleventh Circuit resolved. Ginsburg And how would you answer it? Was Gantt purely prospective, or did Gantt himself get the exclusionary rule? Dreeben Gantt obtained relief. This Court granted certiorari in Gantt limited to the Fourth Amendment question, and Arizona never raised any good-faith exception to the exclusionary rule in that case. So the Court did not address the good-faith issue. Ginsburg Suppose it had been raised. Dreeben The logic of our position would be that to the extent that Gantt was seeking Belton to be overruled, he would not be able to impugn the actions of the officers who relied on it. To the extent that he was doing what he actually did do, and which this Court's opinion in Gantt accepted, which is to say that the Gantt opinion, that the Belton opinion did not resolve the fact pattern in Gantt, he would not be automatically governed by the good-faith exception. And as a result, Gantt is really the best illustration of how unusual it is for a lawyer to come to this Court and say, please outright overrule a Fourth Amendment decision. Kagan Mr. Dreeben, do you think that if a lawyer did that, if a lawyer filed a cert petition and said, you should overturn the following Fourth Amendment precedent, and that was all that was in the cert petition, would we be able to grant that cert petition knowing that there was no possibility of relief for that petitioner? Dreeben Yes, Justice Kagan. I believe the Court could grant that petition, although it's highly likely that any criminal defendant who filed it would couple it with a claim that this Court should either reverse, modify, or limit any holding that came out of it. Kagan But you think that we would have appropriate Article III authority to decide that question without any hope of relief? Dreeben Certainly, the Court would have Article III authority because it's always free to limit, modify, or abrogate one of its precedents, including a holding, if one issued from this decision, that the good-faith rule applies when the Court overrules its decision. Litigants can all the time be faced with impossible arguments under existing precedent, but that doesn't preclude this Court's Article III jurisdiction to adjudicate challenges to that precedent. That's, indeed, the very premise of Petitioner's argument. Scalia I assume if Petitioner says we should be able to overrule our prior substantive precedent, he should also logically say that we should be able to overrule our prior precedent regarding the exclusionary rule, so that whenever somebody wants to come up here to challenge prior precedent, he can just say, you know, Your Honors, we're asking you to overrule two cases, the first one, the substantive rule of Fourth Amendment law, and secondly, whether that change in law can govern the action of the policeman who didn't realize that the law was going to be changed. Dreeben That's correct, Justice Scalia, and I think it illustrates why there's no Article III impediment. Now, this Court may prudentially be reluctant to take a case in which it knows that its resolution of the Fourth Amendment issue would not dictate a reversal of the judgment, even if the Fourth Amendment issue went in favor of the defendant, but it is not that dissimilar from the situation in qualified immunity, when there is no law on the books that governs an issue and a Petitioner asks the Court to resolve the Fourth Amendment issue. Scalia And if he asks for the double overruling that I just suggested, I guess there's some chance that the Court would do it. Dreeben It would be remote, but not zero. And I think that putting to the point that you've just raised, the question of qualified immunity and the similarities, there is one problem that I have with the regime that you're suggesting, which is that because laws differ among circuits, now we've created a regime where we say if the law was clear or if there was law on this issue in your circuit and the police officer relied on it, the exclusionary rule won't apply. But if the law was uncertain or not clear in another circuit, then the exclusionary rule does apply. There's something illogical about permitting that kind of difference to control the outcome of suppression. Are you, through the back door, trying to get into the qualified immunity thing? If any police officer has a reasonable cause to believe their conduct didn't violate the Constitution, then no suppression? That's what it sounds like your brief is ultimately suggesting. Dreeben Well, Justice Sotomayor, we're not trying to come in through the back door with qualified immunity as a standard in this case. If we ever were to urge that, it would be through the front door. We would make the argument overtly. This case doesn't involve that issue. Judge Kravitch's opinion for the Eleventh Circuit very carefully distinguished between cases in which governing precedent instructed the officers, your conduct is lawful if you do this, from cases in which the law is unclear and there is no governing precedent. Sotomayor So there's no value in your mind to the fact, as your adversary is saying, I don't I haven't found one case previously by this Court where it has applied the good faith exception to the finding by the court of a Fourth Amendment violation, have you? It's never been done in any case, correct? Dreeben Not directly under the exclusionary rule. United States v. Peltier considered the factors that now go into the good faith exception under the rubric of then-prevailing retroactivity law. Sotomayor Well, what we're doing is sort of, your adversary is right, we're returning to Linkletter, aren't we? We're sort of saying it's going to apply, the exclusionary rule is going to apply in some cases, but not all. Dreeben Not returning to Linkletter, Justice Sotomayor, because Linkletter was an across-the-board rule that said that this Court had the authority to render. Sotomayor I'm talking about what happened before then. Before. Sotomayor We're going to have the exclusionary rule apply sometimes, but not other times. Dreeben That's true, but that's a direct consequence of the logic of the good faith exception itself. And the considerations that had informed this Court's retroactivity jurisprudence in the Peltier decision were taken out of the law of retroactivity when the Court decided Griffith v. Kentucky, but those same considerations became relevant to the there is a need to deter police misconduct because the police have disregarded the governing law. Breyer Is there anything to be said for simplicity? The normal rule is when the police violate the Fourth Amendment, you exclude the evidence. That's the rule, and there's some exceptions, good faith, et cetera. But that's the normal rule. You have a new law in this Court, the new law says now this is a violation, we didn't previously think it is, but it is, and that applies to the case in front of us and to other cases on direct appeal. The reason that's simple is that's what we've always done. When somebody says let's make an exception here, bring in the exception, good faith, and we say no, why? Not because any of the policy arguments are wrong, but just because as this last 40 minutes demonstrates, once we do that, it's so complicated, only 14 people are going to understand it, and they're not going to understand it either. Dreeben Well, Justice Breyer, I think nine of the people who will understand it are on this Court. Scalia Very optimistic. Dreeben And I'm an optimist. And I think that's Scalia I don't think it's so complicated, counsel. Don't worry about it. Dreeben The principle is very straightforward. The principle is that the exclusionary rule applies only when it can deter police misconduct. When police rely on a warrant issued by a magistrate, a statute, or a judicial decision issued by a court of appeals that governs their conduct, they are not making a decision about what the Fourth Amendment requires. They are following a different actor in the system. And this Court has held that there is no deterrent value to suppress evidence with an important cost to the truth-seeking function of the criminal trial, which is why, even if it makes for a simpler rule, the Court does not automatically suppress evidence just to achieve simplicity. It does not Scalia Actually, why don't we just abolish the exclusionary rule? Let it be really simple. Whatever evidence tends to prove the truth comes in. That would be a very simple system if we're looking for just simplicity, wouldn't it? Dreeben It would be an extremely simple system. Scalia You're not proposing that, though? Dreeben Not in this case, because this case represents only an application of existing doctrine in the Court with respect to the purposes of the exclusionary rule. Kennedy There is something ironic in your position that the defendant who lives in the circuit that is most clearly wrong is treated worse. Dreeben The defendant in these cases is not the object of the Court's protection. I think, as Justice Kagan's question made clear, the exclusionary rule is not a personal individual right. It's not a constitutional right at all. It is a remedy that this Court has devised not to protect the defendant's interests as such. The Fourth Amendment violation has happened out of court. It cannot be repaired. The purpose of the exclusionary rule is to deter future conduct by other counterparts of that police officer or the police officer himself, so that when he confronts the situation in the future, he will be more solicitous of Fourth Amendment rights. And as a rule of law, I would say, how do we encourage police officers to be careful about the Fourth Amendment? There is a presumption somehow that because a circuit precedent exists that says it's okay to do this, that police officers have to do this. I don't necessarily believe that. If there is a circuit split and a police officer knows that other circuits are saying this is unconstitutional, why are we taking away the deterrent effect of having thought occur to the officer about thinking through whether there is a better way and a legal way to do things? With respect to the Fourth Amendment, we've built — your adversary is right — we've built in so many exceptions, and including in this case the inventory search, that the officers had many different ways of doing things than merely doing what this particular court thought was legal before this circuit. So I guess my question is, when there is a circuit split, why are we, as Justice Kennedy is saying, giving protection to the circuit that's plain wrong and to the officer who chose to follow that advice? Justice Sotomayor, we don't expect police officers to attempt to define the content of the Fourth Amendment on their own. They are recipients of the status of the law from the courts that govern their activities. Training programs will be instituted based on that law. I'm sure that careful training programs will advise officers that there may be some legal risk if there is a circuit split and that a decision may ultimately be reversed, but we don't expect police departments to try to make the Fourth Amendment decision on their own. And there's a sound reason to do that. Sotomayor, they're going to be protected from that, meaning they're going to get qualified immunity from any personal liability. Yes, but the reason that the Fourth Amendment balance has been struck in any given way in a particular court is because that is felt to be the reasonable way for officers to operate. And I assume that an officer, when he goes out to do his job, does not have primarily in mind not to get sued, but I think primarily in mind he wants to arrest somebody in such a manner that the person can be convicted of the crime that he's done, right? Justice Scalia, that's exactly right. The officers are seeking to protect the public interest. And by not taking advantage of decisions in their circuits that explain that certain behavior is reasonable, they could be putting the public interest at risk by relinquishing procedures that have been held to comply with the Fourth Amendment and yet allow the police to solve crime or to arrest suspects. Now, there's been a lot of discussion in Petitioner's argument about the need to provide an incentive to counsel to raise Fourth Amendment challenges to existing precedent. I think it's useful at the outset to look a little bit empirically at that question, because some members of the Court have expressed concern about that possibility. From as best as I can tell, this Court has not overruled one of its Fourth Amendment precedents in a manner that favored defendants' interests since 1969. Despite whatever incentives may have existed as a result of the exclusionary rule, defendants will typically understand that stare decisis is the normal course that this Court follows. And as a result, they are highly likely to structure their arguments in a manner that will seek to distinguish, limit, or undermine a precedent, rather than calling for its outright overruling. Alito, particularly in light of that, what is wrong with the suggestion that Justice Kagan raised in one of her questions about retaining an exception to the good-faith exception for the situation for the defendant whose case comes up here and results in the overruling of one of this Court's precedents? The Court invented the exclusionary rule. The Court invented the good-faith exception to the exclusionary rule. Is there anything to prevent the Court from inventing a new exception to the exception to the exclusionary rule? No, Justice Alito, there is nothing to prevent this Court from inventing that exception. That exception would serve the purpose of encouraging litigants to ask the Court to overrule its decisions and thereby to receive a benefit when they do so if it's succeeds in that endeavor. It would limit the costs of the exclusionary rule, which, after all, result in the exclusion of reliable probative evidence of guilt in every case where it's applied. And the Court could tailor the exclusionary rule in that manner. If it did so, it would certainly minimize the costs and it would represent the least amount of intrusion on the purposes of the exclusionary rule. But I would caution the Court in this respect. If the Court were to adopt another purpose for the exclusionary rule, namely, creating incentives for counsel to challenge existing precedent, that will represent a substantial departure from this Court's consistent holdings that the only function of the exclusionary rule is to deter police misconduct. And once the Court has acknowledged that an additional exception to the exclusionary rule is justified, even if in these rare situations, it will create pressure for litigants to urge that additional policy interests of the administration of justice would be served if the Court would create yet another exception. I don't think we'd look particularly good either, do you? I mean, if we had one case raising a Fourth Amendment question, and let's say six others who raise the same question, what would we do? We would grant the first and hold the second? No use to hold the second, because they're going to lose anyway, right? So I guess we'd just grant the first and deny all the rest, even though they're raising the same issue. It doesn't smell very good. I think the strongest argument against the proposal, Justice Scalia, would be an appearance of arbitrariness in the Court's actions. That's why, isn't it? That's why the normal rule has been that the person litigating the case gets the advantage of the new rule, as do other people whose initial appeals are not final. And there we are. That's a rule existing, I guess, for a long time. I guess these other people have to have raised the question in their case. They have to have asked for it. They can't do it. They have to follow normal rules. Has that caused havoc or has that caused things, wreck of the legal system even before 1990? It hasn't caused, Justice Breyer, it hasn't caused havoc for several reasons. One is, it's extraordinarily rare for this Court to overrule its own Fourth Amendment precedent. It's apparently equally rare, or almost equally rare, for the courts of appeals to overrule their precedent and adopt a more defendant-friendly Fourth Amendment rule. I cannot claim to have done an exhaustive survey of all of the courts of appeals' decisions that possibly overruled Fourth Amendment holdings, but the results of my research disclose only one case in which a court of appeals overruled its precedent to favor a defendant, and that occurred in 1987 in the Fifth Circuit. And the Fifth Circuit adopted a good-faith exception precisely like the one that the Fifth Circuit adopted in 1987, and declined to suppress the evidence for that reason. No other circuit has apparently confronted the question of whether overruling a decision triggers the good-faith exception. Breyer. I would have thought it was more for this Court, actually, anyway. I would have — I don't know if it has to be the words overruling. My recollection was, has the Court created a new rule of law? I think it goes back to Cardozo and Sunburst or something. If the Court creates a new rule of law, then does it apply prospective retroactively and the worked-out position was it applies retroactively but to the litigant and to those whose appeals are not final if they raised it? Yes, Justice Breyer. And you want a change in that, it seems to me. No. That is the retroactivity question. And the retroactivity question is, Senator Breyer. You are hiving off the suppression thing. I understand. This Court has acknowledged that the exclusionary rule is not an individual right. It's a remedy. It doesn't involve any violation of constitutional rights of the defendant. It's a remedy that this Court devised after finding a Fourth Amendment. And I think, as Justice Ginsburg pointed out, in Judge Kravitch's opinion for the Eleventh Circuit, Judge Kravitch acknowledged that Gantt is the law, the search in that case was unconstitutional, the next question is an entirely separate issue of remedy, and that remedy issue is governed by this Court's good-faith precedents. And the rarity with which courts of appeals have confronted this simply reflects the fact that even without the lack of incentive that Petitioner says will result if the Court agrees with the government today, holdings that overrule Fourth Amendment decisions squarely and favor defendants do not occur all that often. Ginsburg-McGillivray Will we write — there were several cases that were GBR'd in light of Gantt. Maybe some of them shouldn't have been GBR'd, on your theory. Well, Justice Ginsburg, before the litigation that occurred in the wake of Gantt, there was only one precedent on the books in any circuit that I'm aware of that had applied the — in the Federal system that had applied a good-faith rule to overrule judicial decisions. That was United States v. Jackson in the Fifth Circuit. It's cited in the Eleventh Circuit's opinion in this case. It happened in 1987. So I think it's fair to say that prosecutors and government officials were not raising good-faith exclusionary rule arguments in the cases that were held for Gantt. I don't believe that the United States had done so. And as a result, it was perfectly logical and in accordance with this Court's normal practice to grant, vacate, and remand those cases for further consideration under Gantt. But in the wake of Gantt, courts began to think of the logic of Leon and Krull and this Court's recent decision in Herring v. United States, and attempt to apply the logic of those decisions to a circumstance in which a police officer relies on a binding and governing appellate precedent. And they concluded that courts that announce precedents have every reason to expect that litigants will rely on them and that police officers will rely on them. Therefore, there is no deterrent purpose to be served by suppressing the evidence. It's all cost. And the cost would be that individuals whose convictions have been obtained based on evidence that was seized in reasonable good-faith reliance on existing appellate precedent will now be able to overturn their convictions. And that's a heavy cost to the administration of justice. It's why the exclusionary rule has been confined to particularized circumstances where it's thought that it will actually achieve a benefit, and it has not been expanded beyond those purposes. So given that litigants, criminal defendants, have a tremendous incentive to challenge their convictions and to try to navigate around precedents while simultaneously showing that those precedents may have underlying material flaws, this Court is highly unlikely to be deprived of cases in which litigants attempt to undermine precedents without actually calling for their overruling. That is what happened, for example, in Batson v. Kentucky, where the Petitioner in that case did not want to head-on confront Swain v. Alabama and ask for its overruling, and as a result asserted that racially discriminatory peremptory challenges were invalid under the Sixth Amendment rather than the Equal Protection Clause. This Court got the case and concluded that the proper analysis was the Equal Protection Clause, and it accordingly overruled Swain in relevant part. So it's highly unlikely that if, in fact, a precedent of this Court is beginning to fray around the edges and justices of this Court have written concurrences or dissents that explain that they no longer believe that the logic of that is sound, litigants will exploit those statements in an effort to seek to narrow the precedent and ultimately expose its flaws, so that if this Court determines it can overrule the precedent, that it can do so even if the exclusionary remedy will not follow. Because the rule that you're arguing for apply only in the situation where there is a binding precedent that affirmatively approves a particular police practice, or would it also apply in the situation in which there is simply absolutely nothing on the books that prohibits the police practice, so that a reasonable officer wouldn't have any reason to think that the practice was unconstitutional? This case, Justice Alito, only involves the example of binding appellate precedent, and Judge Kravitch's opinion for the Eleventh Circuit distinguished between the two situations. In the situation in which there is no precedent, such that an officer would not be instructed that his conduct is affirmatively unconstitutional, qualified immunity applies, and there would be arguments that there is nothing to deter if an officer acts within that empty space. But there is a countervailing argument, and the countervailing argument, which Judge Kravitch's opinion, the Eleventh Circuit opinion, would be that when there is no law on the books, courts should give officers an incentive to act in favor of the more constitutionally protective manner, rather than taking a flyer on what might turn out to be unconstitutional. Ginsburg. You did say that if there is ambiguity, then the police must err on the side of not searching. Do you think that that's the do you accept that? No, Justice Ginsburg. I would not submit to the Court that the United States necessarily agrees with that. I think that this case doesn't involve that problem, and as I said, there are contrary arguments that could be advanced based on this Court's description in Herring of the purpose of the exclusionary rule to reach conduct that is either reckless or intentional or, at the least, systematically negligent. And so someday this Court may have to confront whether the narrow limitation that Judge Kravitch adopted in her opinion is the correct rule of law versus a broader view that exclusion is only appropriate when the officers have engaged in truly culpable conduct. But that's not a bridge that the Court needs to cross in this case. It's not an argument that the United States is advancing for affirmance of the judgment. This judgment can be affirmed simply by holding that the syllogism that the court of appeals adopted, that absent a deterrent purpose, there's no basis for exclusion, there is no deterrent purpose here, that's sufficient to resolve this case and the Court can leave for another day if it agrees with that proposition whether the exclusionary rule should have any broader exception for good-faith behavior. If the Court has no further questions. Thank you, Mr. Dreeben. Mr. Kerr, you have 6 minutes. Thank you. I'd like to start with the costs or return to the costs here of the exclusionary rule. First, the plain error doctrine is going to largely address the concerns that the government has in this case. If this Court is seeking to limit the scope of the exclusionary rule, when the Court overturns precedents, under the plain error doctrine, if defendants don't raise a challenge to the search or seizure in their case, there will be no relief available to them. So therefore, the only possible relief that can be granted is for individuals that saw the issue, raised the issue, and that will, of course, include the individual who raises the claim in a case where the Court overturns its precedent, therefore, avoiding any of the difficulties similar to that of retribution. Kennedy, in one sense, if we're talking about costs, the rule the government proposes is defendant-friendly in that this Court may be more willing to impose stricter rules under the Fourth Amendment if it knows that the good-faith rule will protect against the costs of overturning the conviction. That's exactly right, Justice Kennedy. And in fact, that exact argument was one of the reasons Justice Harlan concluded that the exclusionary rule should be available in the first case and on direct review. The Court needs to be aware of the cost when it overturns precedent. It should not depart from precedent lightly. And I think Gantt is a good example. Justice Alito's dissent nicely points out the very real cost of the shift from the Belton rule to the Gantt rule. And if there were no costs in a regime of pure prospectivity, the Court would feel much more free to overturn its precedents because no one would actually be affected by the rule of any cases that are either on direct review or in the initial case or of those individuals whose convictions are already final. But that could work to the benefit of defendants as a class, not the particular defendant. That works to the benefit of defendants as a class, absolutely. In fact, going back to the Linkletter era, that was one of the — perceived as one of the benefits of Linkletter, that it freed the Court to overturn precedent. But I think that is an improper consideration. It is necessary for Fourth Amendment decisionmaking for the Court to accurately weigh the costs and benefits of any shift in the rules. And so I think that the costs of the exclusionary rule in that setting are actually necessary costs. And I also think concerns of a windfall that are available to defendants are overstated because of the many doctrines that limit the scope of the exclusionary rule, such as inevitable discovery or standing. Actually, the only individuals who would receive the benefit of the exclusionary rule would be those individuals who were not searched in the first place if the Constitution were followed. So those are individuals who actually did not receive a — will not receive a windfall. They'll essentially, if they were lucky enough to raise the issue, go back to the State that they were before the Constitution was violated. And again, that's a limited group of people, and those are, I think, the necessary costs required by the basic norms of constitutional adjudication that Justice Harlan raised in his dissent in DeSist v. United States. And I think in a lot of ways this case does return to those concerns of Justice Harlan's DeSist dissent and his separate opinion for the Court in Mackey v. United States. I also wanted to focus on how similar the issue is in this case to — in the Linkletter era, if you read the DeSist dissent, in particular Justice Harlan's dissent, it's clear that he's considering the issue of retroactivity to be about the scope of the exclusionary rule. The Eleventh Circuit below had this idea that retroactivity is about the availability of a rule. But rules are not sort of ephemeral ideas that are available or not without any impact. It must be that if they are available, they are available independently of when they were announced and should be enforced accordingly. If there are no further questions. Roberts. Thank you, Mr. Kerr. The case is submitted.